UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STRIPPIT, INC.,

                Plaintiff,

        v.

KEITH COFFEE,

                Defendant.

**DECISION AND ORDER**
09-CV-509A

## INTRODUCTION

Plaintiff Strippit, Inc. filed a complaint this case accusing defendant Keith Coffee of trademark infringement by running a website that used plaintiff's name without authorization. When defendant failed to answer the complaint, plaintiff requested an entry of default and filed a motion for default judgment. Through its motion papers and through an evidentiary hearing that this Court held on October 14, 2009, plaintiff submitted evidence of lost profit from replacement parts sales that it attributes to defendant's acts of trademark infringement. Given the allegations that defendant is deemed to have admitted by default, and given the evidence that plaintiff submitted with its motion papers and at the evidentiary hearing, the Court will grant the pending motion and award damages as described below.

## BACKGROUND

This case concerns allegations of trademark infringement in violation of both federal and state law. Plaintiff is a manufacturer of machines and replacement parts for the sheet metalworking industry. Defendant worked previously for plaintiff, once as an employee and after that as an independent contractor. On May 28, 2009, plaintiff filed the complaint in this case. According to the complaint, plaintiff owns both registered trademark and common-law trademark rights in the name "Strippit." Plaintiff also owns the rights to the World Wide Web domain name "www.strippit.com" and uses that domain for its website, which features its trademark. At all times relevant to this case, according to plaintiff, defendant had actual and constructive notice of plaintiff's trademark rights under 15 U.S.C. § 1072. *See id.* ("Registration of a mark on the principal register provided by this chapter or under the Act of March 3, 1881, or the Act of February 20, 1905, shall be constructive notice of the registrant's claim of ownership thereof.").

At a time prior to September 18, 2006, defendant allegedly adopted and implemented a plan to engage in a business that he called "Strippit Parts Unlimited," which would sell products related to the sheet metalworking industry by way of the Web. To this end, according to plaintiff, defendant registered the domain "www.strippitparts.com" on or about September 18, 2006 and subsequently created a website that used plaintiff's trademark without

authorization. Plaintiff alleged in its complaint that defendant willfully and intentionally infringed on plaintiff's trademark rights to create customer confusion and to create the false impression that he was selling sheet metalworking products that were either manufactured or endorsed by plaintiff. Defendant allegedly continued operating the website in question despite cease and desist letters sent by plaintiff on February 6, 2009, April 3, 2009, and April 9, 2009. The complaint concluded with 10 different claims: a claim for trademark infringement under 15 U.S.C. § 1114(a); a claim for false designation of origin under 15 U.S.C. § 1125(a); a claim for trademark dilution under 15 U.S.C. § 1125(c); a claim for deceptive trade practices under New York General Business Law § 349; a claim for unfair competition under New York common law; a claim for unjust enrichment under New York common law; a claim for trademark infringement under New York common law; a claim for trademark dilution under New York common law; a claim for palming off under New York common law; and a claim for an accounting under New York common law. According to the affidavit of service filed on July 1, 2009, defendant was personally served with the summons and complaint in this case on June 23, 2009.

Defendant did not answer the complaint within the time provided by Rule 12 of the Federal Rules of Civil Procedure ("FRCP"). Accordingly, plaintiff filed a request for an entry of default on July 17, 2009 pursuant to FRCP 55. The Clerk of the Court filed an entry of default on July 21, 2009. On August 10, 2009,

3

plaintiff filed a motion for a permanent injunction based on defendant's default. After oral argument on August 18, 2009, the Court issued an order on August 24, 2009 that granted plaintiff's motion and permanently enjoined defendant from continuing in activities that would violate plaintiff's trademark rights.

On August 31, 2009, plaintiff filed a motion, pursuant to FRCP 55, for a default judgment with respect to money damages. At oral argument on September 16, 2009, the Court ordered an evidentiary hearing at which plaintiff would have the opportunity to provide testimony and exhibits confirming the damages amount calculated in its motion papers. As mentioned above, the evidentiary hearing occurred on October 14, 2009.

At the evidentiary hearing, Bruce Turner testified in plaintiff's behalf. For the last 11 years, Mr. Turner has been plaintiff's Vice President of Finance and its Chief Financial Officer. Mr. Turner testified that plaintiff seeks money damages for lost profits related only to its replacement parts business. Plaintiff does not seek damages related to its original machinery business. Mr. Turner confirmed that defendant worked for plaintiff as an employee from 1984–89, and then worked as a field service representative in the 1990s on an independent contractor basis. Plaintiff and defendant have had no relationship in this decade.

Mr. Turner then proceeded to offer testimony about the 14 exhibits that plaintiff entered into evidence at the hearing. These exhibits established plaintiff's sales figures, cost of sales, and profit margin for 2006, the year that

4

plaintiff proposed as a baseline that could measure the impact of defendant's conduct. The exhibits then proceeded to establish that expected sales and profit fell in 2007 and 2008 compared to 2006 levels. For the 2009 year, plaintiff discounted its estimate of lost profit to account for economic conditions that prevailed during that time. In short, the exhibits presented at the evidentiary hearing documented the profit from replacement parts sales that plaintiff reasonably expected between October 2006, the first full month after defendant registered the domain for his website, and August 2009, when this Court issued the permanent injunction. The exhibits concluded with a calculation that plaintiff's reasonably expected lost profits resulting from defendant's trademark infringement totaled $1,186,382.29. This calculation corroborated both Mr. Turner's testimony and the arguments and calculations set forth in plaintiff's motion papers.

## DISCUSSION

### *Liability*

"Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation. And it tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citation omitted). Here, plaintiff's complaint alleged multiple violations of the Lanham Act and of state law

pertaining to trademark infringement. Plaintiff's complaint alleged further that defendant had actual and constructive notice of plaintiff's trademark rights and proceeded anyway in a willful and intentional manner. All of these allegations now are deemed admitted. The admission regarding willfulness and intent is particularly significant for the impact that it has on the calculation of damages, as discussed below.

### *Damages*

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted). Here, the Court needed to review plaintiff's motion papers and to order an evidentiary hearing because defendant's default, by itself, could neither quantify nor sustain an award of damages.

The plain text of the Lanham Act contains a provision that governs the Court's assessment of damages. "When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).

Because defendant's default prevents use of the first and third modes of recovery, the Court will focus on the second mode of recovery in Section 1117(a).

To establish actual damages sustained, plaintiff has submitted information that documents a decline in profit after defendant registered the domain for his website in September 2006. Under the circumstances of a default judgment, overall lost profits during the period of infringement may function as a reasonable estimate of lost profits attributable directly to the infringing conduct. As another District Court in this circuit explained at length in a trademark infringement case last year,

> Lost profits are calculated by estimating the revenue lost due to the infringing conduct and subtracting what it would have cost to generate that revenue. *See Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Excelsior Trading Corp.*, 07-CV-3224, 2007 WL 2406887, at *14 (E.D.N.Y. Aug. 16, 2007); *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 305 (S.D.N.Y. 2002). Because it is difficult to determine lost sales caused by infringing conduct, *George Basch [Co., Inc. v. Blue Coral, Inc.]*, 968 F.2d [1532,] 1539 [2d Cir. 1992], the Court may "engage in some degree of speculation in computing the amount of damages, particularly when the inability to compute them is attributable to the defendant's wrongdoing." *See PPX Enters., Inc. v. Audiofidelity Enters.*, 818 F.2d 266, 271 (2d Cir. 1987)[1]; *see also Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S. Ct. 248, 75 L. Ed. 544 (1931); *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 526 (10th Cir. 1987) ("A defendant whose wrongful conduct has caused the difficulty in assessing damages cannot complain that the damages are somewhat speculative"). Any doubts regarding the amount of damages must be resolved against the infringer. *See Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

---

[1]Abrogated in part on other grounds by *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 664 N.E.2d 492 (N.Y. Ct. App. 1996).

> In order to determine lost profits based on declining revenue, a pre-infringement "base line" must be established to predict what revenue plaintiff would have generated absent the infringement. *See Flexitized, Inc. v. Nat'l Flexitized Corp.*, 335 F.2d 774, 779 (2d Cir. 1964) (approving use of evidence of sales before and after breach of exclusive distributorship contract to calculate lost profits); *Lindy Pen Co. v. Bic Pen Corp.,* 14 U.S.P.Q.2d 1528, 1532 (C.D. Cal. 1989) (denying damages for failure of proof on an appropriate base period of sales to compare with the infringement period), *aff'd*, 982 F.2d 1400 (9th Cir. 1993); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30.79 (4th ed. 2002). In addition to proving the actual profits lost, plaintiff must also prove that defendant actually caused the loss of those profits. *See Monsanto Chem. Co. v. Perfect Fit Prods. Mfg. Co.*, 349 F.2d 389, 392 (2d Cir. 1965). In proving causation, a plaintiff "does not have to negate every conceivable intervening factor which might have caused a decline in sales." 5 McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:79. Rather, "[p]roof of a general decline in sales or a disruption of anticipated business growth following the defendant's misconduct can be sufficient in some cases to justify an inference of causation." *See* Restatement (Third) of Unfair Competition § 36 cmt. h (1995). Likewise "[p]roof of a decline in sales combined with evidence tending to discount the importance of other market factors, such as evidence of positive business conditions and the success of similar businesses not subject to the defendant's tortious conduct, can be sufficient to establish a causal connection between the plaintiff's decline in sales and the misconduct of the defendant." *Id.*

*Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 262 (E.D.N.Y. 2008).

Here, plaintiff has submitted evidence of steady sales during normal economic times that declined after defendant registered the domain for his website. That decline continued into 2009 even after correcting for this year's economic conditions. Assuming that no other factors contributed to the amount

of the decline requires some speculation. That speculation is permissible, though, because defendant has made an investigation of plaintiff's damages impossible. Having reviewed all of the information available regarding damages, the Court concludes that plaintiff has submitted accurate calculations based on a reasonable estimate of the damages that it sustained from defendant's trademark infringement. The Court thus agrees with plaintiff that it has sustained damages from defendant's trademark infringement in the amount of $1,186,382.29.

Treble damages are appropriate as well. "In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title . . . in a case involving use of a counterfeit mark or designation . . . the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of . . . intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services . . . ." 15 U.S.C. § 1117(b)(1). Here, defendant chose to default in this case despite being personally served with a copy of the summons and complaint. As mentioned previously, that default constitutes an admission of the allegation in the complaint that defendant acted at all relevant times willfully and intentionally, with knowledge of plaintiff's trademark rights. Defendant's willfulness and intent, even though established by default, suffices to warrant

treble damages. *Cf. Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.*, No. 03 CV 2132, 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006) ("In the case at bar, [defendant's] willfulness, in violating the trademark law, is established by virtue of its default in this action.") (citing *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003)). Accordingly, the Court will triple the amount of plaintiff's lost profits and award plaintiff damages in the amount of $3,559,146.87.

Finally, the Court will address plaintiff's contention in its motion papers that it is "entitled to an award of the attorneys' fees and costs reasonably incurred in the prosecution of this action." (Dkt. No. 8-3 at 6 ¶ 14.) As noted above, 15 U.S.C. § 1117(b) requires the Court to award "reasonable" attorney fees if a trademark violation occurs intentionally. Section 1117(a) permits attorney fees in any "exceptional cases" of trademark infringement. Through his default and through the conduct that he has admitted through his default, defendant has shown the willfulness and intent necessary to sustain an award of attorney fees. *Cf. Kenneth Jay Lane,* 2006 WL 728407, at *7 ("An exceptional case is one in which there is evidence of fraud, bad faith or willful infringement. As noted above, the defendant's infringement has been deemed willful by virtue of its default in this action.") (citing *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993); *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 170 (S.D.N.Y. 1999)). The Court thus will grant plaintiff's request for costs and for attorney fees conditionally. Plaintiff must file a proposed

itemization of costs and time spent, and a proposed hourly rate, or the entitlement to costs and attorney fees will be deemed waived.

## CONCLUSION

For all of the foregoing reasons, the Court grants plaintiff's motion for default judgment and awards damages in the amount of $3,559,146.87.

The Court further grants plaintiff's request for costs and for attorney fees conditionally. The entitlement to costs and attorney fees will be deemed waived if plaintiff does not file supporting documentation within 15 days of the entry of this Order.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: October 27, 2009